UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| INTERNATIONAL MEDCOM, INC, | No. C 13-05193 LB |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART IM'S MOTION TO DISMISS SEI'S COUNTERCLAIMS** |
| v. | |
| S. E. INTERNATIONAL, INC, | |
| Defendant. | [Re: ECF No. 13] |

## INTRODUCTION

This action arises out of the failed business relationship between Plaintiff/Counter-defendant Internal Medcom, Inc. ("IM") and Defendant/Counter-claimant S.E. International, Inc. ("SEI"). They bring claims related to the breach of one or more contracts. IM filed its complaint, and SEI answered and brought counterclaims. IM now moves to dismiss those counterclaims. Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument. Upon consideration of the papers submitted and applicable authority, the court **GRANTS IN PART** and **DENIES IN PART** IM's motion.

## STATEMENT

According to IM's complaint, IM is in the business of developing, producing, and marketing high quality radiation detection instruments and systems. Complaint, ECF No. 1 ¶ 8.[1] SEI

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

manufactures radiation detection instruments. *Id.* ¶ 9. In May 1991, IM and SEI jointly endeavored to develop and market a radiation contamination monitor, which they named "Inspector." *Id.* ¶ 10. To do so, they entered into a contract (the "Inspector Agreement"). *Id.* & Ex. A (Inspector Agreement). Under the Inspector Agreement, IM was to provide an initial cash investment, market research, electronic and mechanical design, engineering, and a custom enclosure, and SEI was to provide an initial cash investment, market research, and technical expertise. *Id.* ¶ 11 (citing Inspector Agreement at 18).[2]

The Inspector Agreement contemplated production and sale of the Inspector by both companies. *Id.* ¶ 12. Under it, whichever company sells more in a given quarter has to pay to the other company royalty payments of 10% of the average selling price per unit on the number of instruments sold in excess of the other company. *Id.* ¶ 13 (citing Inspector Agreement at 19). To this end, the Inspector Agreement requires both companies to maintain sales and payment records and makes those records open to review by either company. *Id.* ¶ 14 (citing Inspector Agreement at 19). IM alleges that it has received no royalty payments, or records of sales, from SEI since the third quarter of 2011. *Id.* ¶ 15.

The Inspector Agreement also discusses the companies' intellectual property rights in relation to the Inspector. It states that "SEI reserves the right to trademark the name 'Inspector' but will allow IM to use the name on this product." *Id.* ¶ 16 (citing Inspector Agreement at 19). It also states that "[t]he rights to the Inspector will be jointly owned by SEI and IM." *Id.* ¶ 17 (citing Inspector Agreement at 20). It further states that "[a]ny proprietary design, software programming, and tolling for the custom enclosure are owned exclusively by IM. SEI will be prohibited from using it in future products without the agreement of IM." *Id.* ¶ 18 (citing Inspector Agreement at 19).

The Inspector Agreement also provides that SEI would fulfill IM's purchase orders and give IM's purchase orders equal priority when doing so. *Id.* ¶ 19 (citing Inspector Agreement at 18). It states that "[a]s a manufacturer, SEI agrees to supply the Inspector in a manner that is necessary to

---

[2] In its complaint, IM cites to specific pages of the Inspector Agreement. These citations are not the electronically-generated page numbers at the top of the document. In this order, the court has changed the citation accordingly. The court also notes that citation to specific paragraphs in the Inspector Agreement is not possible, as the paragraphs were not numbered.

**UNITED STATES DISTRICT COURT**
*For the Northern District of California*

meet demand, maintain quality, and market competitiveness." *Id.* (citing Inspector Agreement at 18). IM alleges that, beginning in the third quarter of 2011, SEI delayed delivery of IM's Spring 2011 purchase orders for about 7 months. *Id.* ¶ 20.

As for the duration of the Inspector Agreement, it states that it would "continue in full force and effect and can only be terminated or changed by mutual agreement of SEI and IM." *Id.* ¶ 21 (citing Inspector Agreement at 17). Should a dispute arise, it provides for mandatory arbitration: "In the unlikely event of an unreconcilable [sic] dispute, both parties agree to appoint an impartial arbitrator or arbitrators within 30 days. The cost of arbitration will be equally shared by both parties and the decision of the arbitrator(s) will be binding." *Id.* ¶ 22 (citing Inspector Agreement at 20).

IM alleges that "[f]or more than 20 years, IM and SEI each independently produced and sold the Inspector product under that name, and regularly continued royalty payments where appropriate, though those payments have never been audited by either company." *Id.* ¶ 23. But on July 30, 2011, Dan Sythe of IM wrote to Susan Skinner of SEI "to express IM's concern with SEI's business practices, including but not limited to predatory pricing on the part of SEI with regard to the Inspector product, aimed at driving down IM sales thereof." *Id.* ¶ 24. Mr. Sythe stated that the companies' business relationship was "not currently working" and set forth a list of proposals to modify the relationship. *Id.* ¶ 24 & Ex. B.

On August 3, 2011, SEI applied to the U.S. Patent and Trademark Office to register the mark "Inspector" in connection with radiation detectors, *id.* ¶ 31, and on September 23, 2011, Ms. Skinner replied to Ms. Sythe, *id.* ¶ 25 & Ex. C. She stated that the business relationship "was no longer serving us" and asserted that she was "terminating" that relationship through her letter. *Id.* She further stated that "if the [Inspector Agreement] defines a binding agreement between SEI and IM, IM has materially breached that agreement." *Id.* She also claimed that SEI owned all right to the Inspector trademark and ordered IM to cease all use of the mark in branding its products. *Id.*

IM and SEI continued to correspond about the dispute during Fall 2011 and into January 2012. *See id.* ¶¶ 26-30. At a high level, SEI told IM to cease using the "Inspector" mark, that IM did own any intellectual property with respect to the Inspector product, and that it had paid IM all money owed. *Id.* ¶ 27. IM disagreed and identified proprietary information that IM says belong to it. *Id.* ¶

28. IM also demanded that the parties arbitrate this dispute, as contemplated by the Inspector Agreement. *Id.* ¶ 29. SEI declined to do so. *Id.* ¶ 30.

On March 5, 2012, IM submitted a challenge to SEI's trademark application. *Id.* ¶ 31. The matter currently is pending before the PTO. *Id.*

IM filed its complaint in this action on November 6, 2013. *See generally id.* It brings five breach of contract claims (nonpayment of royalties; trademark ownership rights; failure to deliver; failure to arbitrate; and wrongful use of proprietary information) based on SEI's alleged breach of the Inspector Agreement. *Id.* ¶¶ 45-68. It also brings a claim for unfair competition in violation of § 43(a) of the Lanham Act and trademark infringement in violation of California common law. *Id.* ¶¶ 69-76. It also brings claims for unfair, unlawful, or fraudulent conduct in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, declaratory judgment, and breach of fiduciary duty. *Id.* ¶¶ 77-89.[3]

On December 5, 2013, SEI answered IM's complaint and brought counterclaims against IM for breach of contract, intentional interference with contractual relations, and unjust enrichment and quantum meruit. Answer, ECF No. 4 at 2-12; Counterclaims, ECF No. 4 at 13-16. In its "General Allegations," SEI alleges as follows:

> 4. [SEI] currently produces the "Inspector" device using its own intellectual property, technology, source code, programming, and other proprietary technology.
>
> 5. Read in context, the term "rights" used in the second full paragraph of the Inspector Agreement refers to rights to sell the Inspector device, not to the trademark or other intellectual rights.
>
> 6. [SEI] has sent multiple accountings, invoices, and e-mails in attempts to reconcile sales, royalties, and other terms owed between the parties.
>
> 7. [SEI] sent multiple checks to [IM] in 2011 and 2012 in order to reconcile accounts owed to [IM].
>
> 8. Any royalty agreement, if existent at all, was abrogated beginning with the 4th Quarter of 2011.
>
> 9. [SEI] made repeated efforts to discern the nature of [IM's] orders in 2011,

---

[3] IM also includes a "motion" to compel arbitration. Complaint, ECF No. 1 ¶¶ 90-95. To the extent that IM actually means to be a motion, it is denied because it violates Civil Local Rule 7, which sets forth the procedure for filing a motion in this court. To the extent that IM means to file a motion in the future, it is directed to comply with that local rule.

including confirming [IM's] orders based on updated pricing, but [IM] failed to provide sufficient information.

10. Mr. Sythe's email of July 30, 2011 constituted unilateral termination of the Inspector Agreement.

11. [SEI] has never intentionally prioritized other customers' orders over [IM's] orders unless there was a genuine business need; if any such prioritization has taken place, it was out of necessity and not malice.

12. [IM's] counsel's email to Mrs. Skinner confirms that if [IM] did not unilaterally terminate the Inspector Agreement, then the termination was mutual.

13. [IM] was aware of [SEI's] relationships with third parties because [IM] provided enclosures and other items that Defendant resold to customers.

14. [IM] admitted that it withheld shipment of the enclosures "to pressure [SEI] to improve the situation for [IM]."

Counterclaims, ECF No. 4 ¶¶ 4-14.

On December 26, 2013, IM filed a motion to dismiss all three of SEI's counterclaims on the ground that they fail to state a claim upon which relief may be granted. Motion, ECF No. 13. SEI filed an opposition, and IM filed a reply. Opposition, ECF No. 15; Reply, ECF No. 16. Both parties have consented to the undersigned's jurisdiction. Consent (IM), ECF No. 7; Consent (SEI), ECF No. 14.

## ANALYSIS

### I. LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle [ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parenthetical omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). This is particularly true where a plaintiff represents himself *pro se*. "A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

## II. BREACH OF CONTRACT

SEI brings a counterclaim for breach of contract. Counterclaims, ECF No. 4 ¶¶ 15-18. Under California law, to recover damages under a breach of contract claim, SEI must prove that: (i) SEI and IM entered into a contract; (ii) SEI did all, or substantially all, of the significant things that the contract required it to do; (iii) IM failed to do something that the contract required it to do; and (iv) SEI was harmed by that failure. *Acoustics, Inc. v. Trepte Construction Co.*, 14 Cal. App. 3d 887, 913 (1971); *see First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).[4]

In the paragraphs specifically relating to this claim, SEI alleges simply that "[a] contract existed between the parties," "[SEI] performed its contractual duties for more than 20 years," "[IM]

---

[4] Because it may be an issue in this action, the court also notes that a court may resolve contractual claims on a motion to dismiss if the terms of the contract are unambiguous. *Barrous v. BP P.L.C.*, 10-CV-2944-LHK, 2010 WL 4024774 (N.D. Cal. Oct. 13, 2010); *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000). However, what the parties intended by an ambiguous contract is a factual determination, *U.S. v. Plummer,* 941 F.2d 799, 803 (9th Cir. 1991), and thus "[w]here the language 'leaves doubt as to the parties' intent,' the motion to dismiss must be denied." *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (quoting *Consul Ltd. v. Solide Enters., Inc.,* 802 F.2d 1143, 1149 (9th Cir. 1986)); *see also Trustees of Screen Actors Guild–Producers Pension and Health Plans v. NYCA, Inc.,* 572 F.3d 771, 777 (9th Cir. 2009).

breached those contractual duties by terminating the business relationship," and "[SEI's] damages were a result of the breach." Counterclaims, ECF No. 4 ¶¶ 15-18. IM argues that SEI's counterclaim must be dismissed because, while its allegations do indeed track the four breach of contract elements, SEI does not allege enough facts to raise a plausible claim for relief. Motion, ECF No. 13 at 6-8.

As for the first element (*i.e.*, the contact), IM points out that SEI fails to allege the terms of, or the rights and obligations created by, the unidentified contract mentioned by SEI, and IM says that this is particularly problematic where SEI, in its answer, disputes IM's interpretation of the Inspector Agreement. *Id.* at 6-7. The court agrees. First, SEI fails to make clear whether it claims that IM breached the Inspector Agreement or some other agreement between the parties.[5] Simply alleging that a contract exists, without describing anything about that particular contract (e.g., allegations to at least identify the contract), is not enough. Second, even assuming that the contract is the Inspector Agreement, SEI never alleges which provisions it believes IM breached. *See* Counterclaims, ECF No. 4 ¶¶ 4-18. This fails to put IM on notice what it allegedly did wrong and is not sufficient. While the court understands SEI's argument that the pleadings ought to be read together, it would be better for SEI to identify the contract and its relevant terms so that it also can say (and IM and the court can understand) what IM did that is a breach of that contract.

As for the second element (*i.e.*, performance), IM says that SEI's allegation that it "performed its contractual duties for more than 20 years" is not sufficient because IM has alleged, in its complaint, that SEI did not perform all of its obligations, but in this situation the court disagrees. To fulfill the element, SEI needs to allege that it performed its part of the agreement, and SEI's allegation does that. SEI does not need to respond, in its counterclaim allegations, to IM's complaint, as IM suggests.[6]

---

[5] SEI suggests in its opposition that the contract at issue is the Inspector Agreement and that this was clear because it incorporated by reference its responses to IM's complaint. *See* Opposition, ECF No. 15 at 3. The court understands that, but simply relying on responses in an answer (which in turn reference allegations in IM's complaint) is not sufficient; SEI must identify the contract.

[6] In its motion, IM states: "Under the plain language of [SEI's allegation that it "performed its contractual duties for more than 20 years"], [IM] would agree that [SEI] performed at least some

As for the third element (*i.e.*, breach), IM argues that SEI's allegation that IM "breached those contractual duties by terminating the business relationship" is insufficient because SEI never states what contractual duties were breached or whose duties they were. Motion, ECF No. 13 at 7. The court agrees. As mentioned above, because SEI never identified or explained the terms of the contract, it is not clear whether "terminating the business relationship" constitutes a breach of the contract.[7]

In sum, SEI's breach of contract counterclaim is not sufficiently pleaded and must be dismissed. Because SEI may be able to cure the identified deficiencies with additional or clearer factual allegations, the SEI's breach of contract counterclaim is **DISMISSED WITHOUT PREJUDICE**.

### III. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

SEI also brings a counterclaim for intentional interference with contractual relations. Counterclaims, ECF No. 4 ¶¶ 19-23. As the Ninth Circuit has explained:

> California provides a cause of action against a defendant who interferes with a contract between the plaintiff and a third party. As the California Supreme Court has stated:
>
>> The courts provide a damage remedy against third party conduct intended to disrupt an existing contract precisely because the exchange of promises resulting in such a formally cemented economic relationship is deemed worthy of protection from interference by a stranger to the agreement.
>
> *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 392, 45 Cal. Rptr.2d 436, 902 P.2d 740 (1995). The tort of intentional interference with contract requires allegations of the following elements: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55, 77 Cal. Rptr. 2d 709, 960 P.2d 513 (1998).

---

of its contractual obligations, and did so for more than 20 years. However, [IM] argues that [SEI] breached important parts of its contractual obligations, and materially breached its obligations prior to commencement of this lawsuit, roughly 22 years afer the [Inspector Agreement] was first executed." Motion, ECF No. 13 at 7.

[7] In its opposition, SEI again argues that it "alleged in its answer that [IM] had breached the contract between the two parties," *see* Opposition, ECF No. 15, but as the court explained in a previous footnote, SEI must include factual allegations in its counterclaims.

C 13-05193 LB
ORDER                                  8

1 *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007).

2   In the paragraphs specifically relating to this claim, SEI alleges that "valid contracts existed between [SEI] and its customers because [SEI] provided Inspector tools, enclosures, and other items to customers," "[IM] knew of these contracts because [IM] supplied the booklets and other items that [SEI] was contractually obligated to sell to third-party customers," and "[IM]'s intentional acts were designed to induce a breach or disruption of the contractual relationship 'to pressure [SEI] to improve the situation for [IM].'" *Id.* ¶ 19-21. SEI alleges that it lost customers and was damaged due to this disruption. *Id.* ¶ 22-23. IM argues that SEI's allegations are not sufficient to state a claim for intentional interference with contractual relations. Motion, ECF No. 13 at 8-9.

   The court agrees with IM. First, SEI's allegation regarding the contracts between it and its customers is not sufficient. SEI suggests that such contracts must exist because it "provided Inspector tools, enclosures, and other items to customers," but this does not necessarily follow. If SEI has contracts between it and its customers, while it need not identify each and every contract, it at least must describe what those contracts involved. Second, SEI's allegation that IM "knew of these contracts because [IM] supplied the booklets and other items that [SEI] was contractually obligated to sell to third-party customers" also does not follow. IM, for instance, could have provided "booklets and other items" to SEI without knowledge of SEI's contracts with its customers. And third, SEI's allegation that "[IM]'s intentional acts were designed to induce a breach or disruption of the contractual relationship 'to pressure [SEI] to improve the situation for [IM]'" also is not sufficient because it does not explain how the two events—"[IM]'s intentional acts" and disruption of the contracts between SUI and its customers—are related.

   In sum, SEI's intentional interference with contractual relations counterclaim is not sufficiently pleaded and must be dismissed. Because SEI may be able to cure the identified deficiencies with additional or clearer factual allegations, the SEI's breach of contract counterclaim is **DISMISSED WITHOUT PREJUDICE**.

## IV. QUANTUM MERUIT

SEI also brings a counterclaim for quantum meruit. Counterclaims, ECF No. 4 ¶¶ 24-26.[8] As one judge in this district has previously explained:

> Under California law, quantum meruit is "an equitable remedy implied by the law under which a plaintiff who has rendered services benefitting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *In re De Laurentiis Entertainment Group, Inc.*, 963 F.2d 1269, 1272 (9th Cir.), *cert. denied*, *Carolco Television, Inc. v. National Broadcasting Co., Inc.*, 506 U.S. 918, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992), *citing*, B. Witkin, Summary of California Law: Contracts § 91 (1987) and 55 Cal. Jur. 3d Restitution 360–61 (1980); *see Hahn v. Oregon Physicians' Serv.*, 786 F.2d 1353, 1355 (9th Cir.1985) (applying Oregon law noting that "[t]he purpose of quantum meruit is to prevent unjust enrichment at the expense of another"); *Arrison v. Information Resources, Inc.*, No. C95–3554 [TEH], 1999 WL 551232, *6 (N.D. Cal. July 16, 1999) ("[t]he underlying idea behind quantum meruit is the law's distaste for unjust enrichment"). Where a party has received a benefit which the party may not justly retain and the parties have no actual express contract covering compensation, for reasons of justice the law will imply a contract to pay for services rendered. *See Iverson, Yoakum, Papiano & Hatch v. Berwald*, 76 Cal. App. 4th 990, 996, 90 Cal. Rptr. 2d 665 (1999); *Maglica v. Maglica*, 66 Cal. App. 4th 442, 449, 78 Cal. Rptr. 2d 101 (1998).
>
> To establish a claim for quantum meruit, the plaintiff must prove that: [1] the plaintiff rendered services to the defendant's benefit; and [2] the defendant would be unjustly enriched if the plaintiff was not compensated. *Arrison*, 1999 WL 551232, at *6, *citing*, *De Laurentiis*, 963 F.2d at 1272. The claim applies especially where the defendant acquires the benefit with knowledge of the circumstances establishing unjust enrichment. *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1663–64, 15 Cal. Rptr. 2d 173 (1992). The plaintiff and a defendant need not be in contractual privity with each other; the plaintiff may recover on a quantum meruit theory from any other party even though no express or implied contractual relationship exists. *See De Laurentiis*, 963 F.2d at 1273, *citing*, *Kossian v. American National Ins. Co.*, 254 Cal. App. 2d 647, 649–50, 62 Cal. Rptr. 225 (1967) (allowing recovery under quantum meruit where no implied contact existed and the plaintiff did not expect compensation from the current defendant, but a third-party). A defendant's expectation to compensate for a received benefit is not necessary, but compensation must be "expected" by a plaintiff "only in the sense that the services rendered must not have been intended to be gratuitous." *Id.* at 1272–73.

---

[8] SEI's counterclaim states that it is for "unjust enrichment and quantum meruit." Counterclaims, ECF No. 4 ¶¶ 24-26. As IM points out, however, some California courts have held that there is no stand alone cause of action for unjust enrichment; rather it is "a general principle, underlying various legal doctrines and remedies." *Herrington v. Johnson & Johnson Consumer Co., Inc.*, No. C 09-1597 CW, 2010 WL 3448531, at *13 (N.D. Cal. Sept. 1, 2010) (listing cases)); *see also McBride v. Boughton,* 123 Cal. App. 4th 379 (2004) ("Unjust enrichment is not a cause of action, however, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution.") (internal citations and quotation marks omitted). In its opposition, SEI concedes as much and mentions only quantum meruit. Opposition, ECF No. 15 at 7-8 & n.3.

*Precision Pay Phones v. Qwest Commc'ns Corp.*, 210 F. Supp. 2d 1106, 1111-1112 (N.D. Cal. May 31, 2002).

In the paragraphs specifically relating to this claim, SEI alleges that "[IM] received benefits owing to [SEI] by virtue of [IM's] using the Inspector trademark and by other acts such as withholding the enclosures," "[IM] unjustly retained the benefit at the expense of [SEI]," and "[SEI] suffered losses and damage by being denied those benefits." Counterclaims, ECF No. 4 ¶¶ 24-26. IM argues that SEI's quantum meruit allegations "are fundamentally irreconcilable with" its breach of contract allegations. Motion, ECF No. 13 at 10. But Federal Rule of Civil Procedure 8(d)(3) provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." *See Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 189 (3d Cir. 1999) ("[A] plaintiff may plead in the alternative, and our caselaw finds no difficulty with pairing the two claims in one complaint."); *Marcella v. ARP Films, Inc.*, 778 F.2d 112, 117 (2d Cir. 1985) (finding plaintiff could properly submit his case on both a contract claim and a quantum meruit claim); *Bernardi v. JPMorgan Chase Bank*, No. C–11–04543 RMW, 2012 WL 33894, at *2 (N.D. Cal. Jan. 6, 2012); *Continental DIA Diamond Prods., Inc. v. Dong Young Diamond Indus. Co., Ltd.*, No. C 08-02136 SI, 2008 WL 3977703, at *4 (N.D. Cal. Aug. 26, 2008). IM also argues that SEI's allegations also are "conclusory," but it does not go into detail about why this is so. *See* Motion, ECF No. 13 at 10. Accordingly, the court finds that SEI's quantum meruit allegations are sufficiently alleged and **DENIES** IM's motion to dismiss this counterclaim.

## CONCLUSION

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** IM's motion to dismiss SEI's counterclaims. SEI may file First Amended Counterclaims no later than February 14, 2014.

**IT IS SO ORDERED.**

Dated: January 23, 2014

_____
LAUREL BEELER
United States Magistrate Judge
UNITED STATES DISTRICT COURT
For the Northern District of California